# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1225V

| | |
|---|---|
| MICHAEL CALVIN MILLER,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: August 27, 2025 |

*Dylan Wilbanks*, Wilbanks Law Firm, P.C., Commerce, GA, for Petitioner.

*Sarah Black Rifkin*, U.S. Department of Justice, Washington, DC, for Respondent.

### **PARTIAL RULING ON DAMAGES**[1]

On September 18, 2020, Michael Calvin Miller filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") following the receipt of a pneumococcal conjugate vaccine on November 9, 2018. Petition at 1, ¶¶ 2, 23-24. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Approximately three months after I determined Petitioner was entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Nov. 4, 2022, ECF No. 41.
.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$140,000.00 for past pain and suffering, plus $1,500.00 per year for future pain and suffering.** The remaining damages categories to be decided and net present value of any compensation attributable to future amounts require additional input from the parties before they can be resolved.

**I.   Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress

2

contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II. Prior SIRVA Compensation Within SPU[4]

### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2025, 4,983 SPU SIRVA cases have resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (4,817), with the remaining 166 cases dismissed.

2,744 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation.[5] In only 310 of these cases, however, was the amount of damages determined by a special master in a reasoned decision.[6] As I have previously

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 2,073 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,403 cases) or stipulation (31 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

3

stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[8] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *310* | *2,403* | *31* | *2,073* |
| **Lowest** | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| **1st Quartile** | $67,020.04 | $60,000.00 | $90,000.00 | $30,000.00 |
| **Median** | **$91,290.04** | **$79,444.74** | **$115,772.83** | **$50,000.00** |
| **3rd Quartile** | $125,000.00 | $106,293.26 | $161,501.20 | $75,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 310 SPU SIRVA cases in which damages were determined via reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $90,000.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

---

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III.    The Parties' Arguments

Petitioner asserts that he is entitled to a past pain and suffering award of $250,000.00, the maximum amount allowed under the Vaccine Act. Petitioner's Damages Brief ("Brief") at 11; *see* Section 15(a)(4) (statutory limit for actual and projected pain and suffering). "If . . . his past pain and suffering does not merit that cap, he asks that an annual amount be prescribed to his future pain and suffering." Brief at 11. However, he does not propose a yearly amount.

When arguing for this maximum award, Petitioner contends that "his pain rating through the years has consistently ranged between three and seven on the widely-used ten-point scale." Brief at 9. Referencing his treating physicians' warning "that his condition

---

application of the statutory cap before any projected pain and suffering award is reduced to net present value).

would be progressive," he reports a continuing tremor and weakness in his left hand which he characterizes as debilitating. *Id.* He adds that, in the last year, he has experienced "the 'mirroring' of this symptom that is common to CRPS.[11]" Brief at 9. Insisting that he "consistently sought treatment for his condition and continues to do so" (*id.* at 9), he asserts that he "will continue to suffer significant pain that affects the quality of life for the rest of his life[12]" (*id.* at 9-10).

Maintaining that "CRPS is a recognized sequela of SIRVA,[13]" Petitioner favorably compares his facts and circumstances to those suffered by the petitioner in *Schettl*[14] – a case involving a CRPS injury, past pain and suffering award of $200,000.00, and future award of $10,000.00 per year. Brief at 10. He specifically mentions the *Schettl* petitioner's difficulties sleeping, engaging in physical activities, socializing, and battling depression; lack of pain resolution from a ganglion nerve block; and similar "'mirroring' of symptoms in her other side." *Id.*

Petitioner also seeks $10,957.81 for past expenses, and $2,466.48 per year for future.[15] Brief at 11. The past expenses are comprised of "$5,690.47 paid either for co-pays to his providers, or for prescription medication, or for over-the-counter products, or

---

[11] CRPS stands for "complex regional pain syndrome." MEDICAL ABBREVIATIONS at 152 (16th ed. 2020).

[12] Petitioner calculates his life expectancy as being 13.08 years. Brief at 10 n.1.

[13] To support this assertion, Petitioner cites three cases - *Thompson, Vendiola,* and *Tucker-Corley.* Brief at 10 n.2. However, *Thompson* involved an informal settlement without any entitlement determination. *Thompson v. Sec'y of Health & Hum. Servs.,* No. 14-0422V, 2022 WL 624024 (Fed. Cl. Spec. Mstr. Jan. 27, 2022); *see supra* note 12 (for further explanation regarding this type of case resolution). *Vendiola* and *Tucker-Corley* were cases involving allegations of brachial plexopathy and SIRVA, respectively, following receipt of flu vaccines. In both cases, Respondent opposed entitlement based upon the alleged injury but conceded entitlement based upon a causal connection between the flu vaccine and CRPS injury. *Vendiola v. Sec'y of Health & Hum. Servs.,* No. 19-1780V, 2020 WL 7238475 (Fed. Cl. Spec. Mstr. Nov. 5, 2020); *Tucker-Tucker-Corley v. Sec'y of Health & Hum. Servs.,* No. 20-1797V, 2022 WL 359027 (Fed. Cl. Spec. Mstr. July 27, 2022. In both cases, damages were then awarded based on Respondent's proffer, with the *Vendiola* petitioner receiving $120,000.00 in damages ($99,785.39 of which was attributed to pain and suffering without any past or future designation) and the *Tucker-Corley* petitioner receiving $62,500.00 for pain and suffering (again without any past or future designation). *Vendiola v. Sec'y of Health & Hum. Servs.,* No. 19-1780V, 2021 WL 965667 (Fed. Cl. Spec. Mstr. Feb. 8, 2021); *Tucker-Tucker-Corley v. Sec'y of Health & Hum. Servs.,* No. 20-1797V, 2022 WL 17968801 (Fed. Cl. Spec. Mstr. Oct. 26, 2022).

[14] Petitioner cites the prior ruling on pain and suffering which contains the most detailed discussion of the facts and circumstances relevant to the pain and suffering determination. *Schettl v. Sec'y of Health & Hum. Servs.,* No. 14-0422V, 2019 WL 664493 (Fed. Cl. Spec. Mstr. Jan. 22, 2019) (ruling determining a past pain and suffering award of $200,000.00, and $10,000.00 per yearly for future pain and suffering). The final award was made eleven months later in December 2021. *Schettl v. Sec'y of Health & Hum. Servs.*, No. 14-0422V, 2021 WL 6502203 (Fed. Cl. Spec. Mstr. Dec. 20, 2021) (awarding $200,000.00 for past/actual pain and suffering and $40,750.00 for future/projected pain and suffering).

[15] In subsequent briefing, Petitioner increased this amount based upon additional unreimbursed expenses paid.

equipment recommended by his healthcare providers," and $5,267.34 for 9,004 miles driven to medical appointments, paid at a rate of $0.585 per mile. *Id.* The requested future expenses are based upon a monthly amount of $205.54, representing $115.06 for medications (Metaxalone, Lidocaine patches, Ibuprofen, and turmeric) and $90.48 for mileage to and from his psychotherapist. *Id.* To document these expenses Petitioner relies upon his affidavit, signed and notarized on December 21, 2022; a list of mileage amounts and corresponding dates; a printout of potential co-pays that appears to have been obtained from Medicare.gov; and a list of prescriptions, the origin of which is unclear.[16]

Based upon the assertion that many of the symptoms Petitioner experienced in February 2019 and later (more than three months post-vaccination) were not vaccine-related, Respondent initially proposed $70,000.00 for past pain and suffering. Respondent's Brief Regarding Damages ("Opp.") at 9, 11. He continues to maintain that only $4,058.27 - of the $10,957.81 in out-of-pocket medical expenses and mileage Petitioner seeks - are related to Petitioner's SIRVA, but has not identified specifically the expenses he believes should be paid. *Id.* at 2 n.1.

Emphasizing the lack of treating physician opinion related to the cause of these new symptoms and at least one physician statement which undermines a causal link (Opp. at 10)(the evidence available at that time), Respondent insisted that "[a]part from some temporal overlap with [P]etitioner's SIRVA symptoms, nothing in the medical records suggested that [P]etitioner's new symptoms were SIRVA-related or were caused by the Prevnar vaccine." *Id.* at 9. Characterizing Petitioner's SIRVA as mild to moderate, requiring only limited, non-surgical treatment (*id.* at 11), he proposed *Bartholomew, Sakovits, Coli,* and *Lambert*[17] – involving past pain and suffering awards ranging from $67,000.00 to $73,000.00, as comparable cases. Opp. at 10 n.8. He.

Shortly after the parties provided their initial briefing, Petitioner requested that the proceedings be suspended, and he be allowed to retain an expert to opine as to the cause of his CRPS.[18] Petitioner's Motion to Suspend Proceedings and Obtain an Expert Report,

---

[16] Along with an affidavit executed by his wife on December 2, 2022, this documentation was filed as attachments to his damages brief at ECF Nos. 45-1 and 45-2.

[17] *Bartholomew v. Sec'y of Health & Hum. Servs.*, No. 18-1750V, 2020 WL 3639805 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $67,000.00 for past pain and suffering); *Sakowitz v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420 (Fed. Cl. Spec. Mstr. June 4, 2020) (awarding $68,000.00 for past pain and suffering); *Coli v. Sec'y of Health & Hum. Servs.*, No. 20-0543V, 2022 WL 706682 (Fed. Cl. Spec. Mstr. Feb. 4, 2022 (awarding $70,000.00 for past pain and suffering); *Lambert v. Sec'y of Health & Hum. Servs.,* No. 19-1335V, 2022 WL 1487253 (Fed. Cl. Spec. Mstr. Mar. 29, 2022) (awarding $73,000.00 for past pain and suffering).

[18] He also submitted a video discussing his symptoms. *See* Portable Storage Disc or Drive, received Dec. 27, 2022.

filed Dec. 23, 2022, ECF No. 47. I granted Petitioner's motion in part, instructing him to retain an expert to opine on the extent of his sequela, including whether symptoms attributable to CRPS can be linked to Petitioner's SIRVA, but declining to stay the case. Order, issued Jan. 27, 2023.

In May 2023, Petitioner filed updated medical records; another affidavit related to his unreimbursed expenses; and an expert report, curriculum vitae ("CV"), and accompanying medical literature from Enrique Aradillas-Lopez, M.D. Exs. 16-35, filed May 18, 2023, ECF Nos. 50-51. In the report, Dr. Aradillas-Lopez opines that "all of Mr. Miller's symptoms correspond to the natural history of CRPS, and he meets the diagnostic criteria." Ex. 22 at 7. He adds that "Mr. Miller's entire history of attempted treatments of his left upper-arm pain, and the limited progress he achieved despite three discrete attempts at physical therapy reveal a chronic condition." *Id.* at 8. Although he acknowledges Mr. Miller suffered from depression prior to vaccination (*id.* at 2), Dr. Aradillas-Lopez emphasizes that condition is "common among patients with chronic pain" (*id.* at 10).

After reviewing Dr. Aradillas-Lopez's expert report, Respondent expressed a desire to renew damages discussions in lieu of filing a responsive expert report. Status Report, filed Aug. 8, 2023, ECF No. 54. On October 17, 2023, the parties informed me that they had again reached an impasse. ECF No. 56.

Citing the expert opinion provided by Dr. Aradillas-Lopez, Petitioner reiterates his position that his CRPS is sequelae of his SIRVA. Petitioner's Response to Respondent's Damages Brief ("Pet. Responsive Brief") at 1-4. Insisting that his treatment has been continuous, and his injury is permanent, he again requests a pain and suffering award of $250,000.00. *Id.* at 4-7. He updates the amount he seeks for past unreimbursed expenses to reflect $12,991.84 ($6,441.44 of which is for mileage) but proposes the same amount - $2,466.48 per year for future expenses. *Id.* at 8.

Respondent has in reaction raised his proposed past pain and suffering award to $95,000.00. Respondent's Responsive Brief Regarding Damages ("Res. Responsive Brief") at 2. Although he "does not concede that [P]etitioner suffered CRPS or any other neurologic condition as a stand-alone injury, separate from SIRVA," Respondent acknowledges that Petitioner *may* have suffered from CRPS symptoms that could be linked to his SIRVA, or at a minimum are difficult to separate from those more obviously SIRVA-related. *Id.* at 2 n.1.

Noting the almost two-year gap in treatment from August 2021 until May 2023, as well as treating physician statements and testing showing Petitioner's left-hand tremor was mild, and may not be SIRVA-related, Respondent argues that there is no indication

that Petitioner's "injury will result in permanent sequelae." Res. Responsive Brief at 11. He attempts to distinguish the *Schettl* decision cited by Petitioner, claiming that it involves brachial neuritis, rather than a CRPS injury.[19] *Id.* Instead, he proposes *Vendiola* and *Snyder*[20] - CRPS cases featuring proffered past pain and suffering awards of $99,785.39 and $115,000.00, respectively.

## IV. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Mr. Miller suffered a moderate SIRVA injury, accompanied by traditional SIRVA symptoms, as well as sequelae attributable to the development of CRPS. Although he slowly gained relief from his traditional SIRVA sequelae following his third attempt at PT (attending more than 50 PT sessions from July 2019 through September 2020), Petitioner continues to experience ongoing, albeit milder CRPS sequelae. Based upon statements from his treating physicians theorizing that his CRPS sequelae could be linked to his SIRVA, as well as Dr. Aradillas-Lopez's opinion as stated in his expert report, I find that all these symptoms should be considered SIRVA-related.

During the initial seven months of his injury, from early November 2018 through mid-June 2019, Petitioner consistently described pain at levels fluctuating from three to seven. When he first sought treatment at an urgent care facility five weeks post-vaccination on December 15, 2018, Petitioner reported swelling and left shoulder pain at a level of five out of ten. Ex. 3 at 5, ECF No. 28-4.[21] At his second visit with his primary

---

[19] It is important to note that the rulings and decisions in *Schettl* state compensation was awarded for CRPS determined to be vaccine-caused, not brachial neuritis. *See Schettl*, 2019 WL 664493; *Schettl*, 2021 WL 6502203.

[20] *Vendiola,* 2021 WL 965667; *Snyder v. Sec'y of Heath & Hum. Servs.,* No. 18-0122V, 2019 WL 7597449 (Fed. Cl. Spec. Mstr. Dec. 13, 2019).

[21] Because there was some overlap and confusion regarding the exhibits in this case, I will cite to the corresponding docket number when first citing any medical record.

9

care provider ("PCP") on January 10, 2019, he also complained of limited ROM, confirmed during his physical examination. Ex. 4 at 94-95, ECF No. 28-5. Oral steroids prescribed during this time failed to alleviate Petitioner's pain.[22] And an MRI performed on February 8, 2019, revealed AC joint arthropathy consisting of mild rotator cuff bursitis and bursal-sided fraying, "[s]uspected remote humeral avulsion[23] of the inferior glenohumeral joint, [and] [m]oderate glenohumeral joint degeneration, with cystic changes most prominent in the region of the humeral attachment." Ex. 12 at 5, ECF No. 28-10.

At his third PCP visit in mid-February 2019 (approximately three months post-vaccination), Petitioner recounted worsening pain and the development of significant vein prominence. Ex. 4 at 87. After attending two PT sessions in March 2019, he chose to discontinue care until he met again with his vascular specialist. Ex 10 at 5. *Id.* At his next visit with his vascular specialist in May 2019, Petitioner reported worsening pain and depression, along with a new onset of hand tremors. Ex. 5 at 29, ECF No. 28-6.

In addition to these visits with his PCP and vascular specialist, Petitioner attended multiple visits with an orthopedist, pain specialist, and neurologist. At his first visit with his orthopedist in March 2019, Petitioner reported intermittent, dull, sharp, throbbing, achy, and shooting pain, ranging from three to seven. Ex. 7 at 1, ECF No. 28-8. Due to the vascular changes Petitioner was experiencing, the orthopedist opined that he may be developing CRPS. *Id.* at 3. After Petitioner reported worsening symptoms at his next orthopedic appointment in April 2019, the orthopedist administered a steroid injection, prescribed Neurontin,[24] and referred him to a pain specialist for treatment of CRPS. *Id.* at 4-6.

Petitioner appears to have gained little to no relief from the steroid injection, as he again reported sharp, aching pain ranging from four to seven when first seen by the pain specialist. Ex. 1A[25] at 52, ECF No. 39-3. However, he gained significant pain relief, especially in the lower arm, from a left stellate ganglion block performed on June 11,

---

[22] Although the PCP record from Petitioner's December 2018 visit contains conflicting entries, stating that the prescribed prednisone "[wa]s not working" and "has improved him significantly" (Ex. 4 at 101), the record from his next visit on January 10, 2019, states "[t]he steroids have not seem [sic] to help very much in regards to pain, swelling, range of motion" (*id.* at 94). Thus, Petitioner does not appear to have gained much relief from this medication.

[23] Avulsion is "the ripping or tearing away of a part either accidently or surgically." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 184 (32th ed. 2012).

[24] Neurontin is a "trademark for preparations of gabapentin." DORLAND'S at 1268.

[25] Because Petitioner mistakenly labeled the pain specialist medical records as a second Exhibit 1, I am redesignating it as Exhibit 1A.

2019. *Id.* at 33 (noting pain at a level of two to ten prior to the procedure and zero pain thereafter). By the next day, Petitioner estimated his pain to be two out of ten, adding that he had 90 percent relief in his lower arm. *Id.* at 30. These results helped confirm the diagnosis of CRPS. *Id.* at 32. A nerve conduction study ordered by Petitioner's neurologist, and performed in August 2019, revealed findings that may be explained by a diagnosis of CRPS. Ex. 9 at 26, ECF No. 28-10.

Petitioner continued to make good, albeit slow, progress from PT that was initiated on July 19, 2019. Although he reported a current pain severity of six (with a range from two to eight) at his first PT session, his current level had improved to two (with a range from one to six) by his 19th session and recertification on September 24, 2019. *Compare* Ex. 6[26] at 1, ECF No. 28-7 *with id.* at 49. After a brief break in PT beginning in March 2020, he returned for nine additional sessions from July through September 2020. Ex. 6 at 151 (41st session on March 13, 2020), 154 (June 2020 discharge), 213 (51st session on September 17, 2020). In mid-September 2020, he reported current pain of two, with a range from one to four. *Id.* at 208.

In 2020, Petitioner also continued to seek treatment from his vascular specialist and neurologist, reporting continuing and worsening vein prominence and tremors. Ex. 5 at 61 (visit with the vascular specialist on February 7, 2020); Ex. 9 at 11 (neurologist visit on August 21, 2020). Additionally, he began attending therapy for his depression in mid-January 2020. Ex. 8[27] at 4, ECF No. 28-9.

Thereafter, Petitioner sought only a minimal amount of medical care, and it is important to note that this care occurred after the vaccine claim was filed. Petitioner attended 10 additional PT in July through September 2021, reporting pain levels between three and seven. *E.g.,* Ex. 4A at 6. He recounted improvement in his hand tremors after performing his home exercise and attending massage therapy, continued difficulty sleeping, and a desire to stop taking pain medication in the future. *Id.* In May 2023, Petitioner was prescribed medication for his hand tremors. Ex. 19 at 2-3.

Although I have determined that Petitioner's CRPS symptoms, including his vein prominence and tremors, should be considered sequelae of his SIRVA, his injury was not as severe as that suffered by the *Schettl* petitioner. Only 44 years old when injured, the *Schettl* petitioner suffered symptoms such as burning pain that made her feel like she

---

[26] Although this exhibit is bates stamped and paginated using both Exhibits 6 and 13, it is clearly meant to be designated as Exhibit 6, and will be referenced as such. *See* Exhibit List, filed Nov. 5, 2021, ECF 28-1.

[27] Although this exhibit also is bates stamped and paginated as both Exhibits 8 and 13, and referred to as Exhibit 13 in Petitioner's initial brief (Brief at 5), it appears it was meant to be designated as Exhibit 8. *See* Exhibit List, ECF No. 28-1. Petitioner also refers to the exhibit as Exhibit 8 in his responsive brief. Pet. Responsive Brief at 4.

was being punched in the arm, sleep disturbances, and sensitivity to touch and temperature for more than seven years at the time of her award. *Schettl,* 2019 WL 664493, at *2, 10-11. Because Petitioner's symptoms were less severe, his past pain and suffering award should be less - not more as Petitioner contends. However, this case does provide an upper limit for Petitioner's award.

Likewise, the CRPS comparable cases Respondent cited in his responsive brief[28] provide incomplete guidance for what Petitioner's award should be. Although unclear from the decisions issued because those awards were based upon an agreed-upon proffer,[29] they involved injuries which required significantly less treatment than Petitioner's did.

Instead, I find several non-surgical SIRVA cases - *Dawson-Savard*, *Binette* and *Danielson*[30] - helpful. They involved past awards ranging from $110,000.00 to $130,000.00, with future awards of $250.00 to $1,000.00 per year. Although none also involved CRPS secondary to a SIRVA, these petitioners all suffered from moderate to severe SIRVA injuries that continued for several years despite extensive, non-surgical, treatment with a prognosis that included the strong possibility of continuing sequelae. *Danielson,* 2020 WL 8271642, at *3-5; *Dawson-Savard,* 2020 WL 4719291, at *3-4; *Binette,* 2019 WL 1552620, at *13-15. In particular, the *Binette* and *Dawson-Savard* petitioners suffered similar injuries. Because Petitioner struggled with the added difficulty of having developed CRPS, and the accompanying uncertainty related to his initial diagnosis, as well as the likelihood that his symptoms will progress, I will award a slightly greater amount for both his past and future pain and suffering. I find an award of $140,000.00, plus $1,500.00 per year, to be appropriate.

## V.     Appropriate Compensation for Unreimbursed Expenses

One of the reasons why the amount for Petitioner's future pain and suffering is slightly lower than I would otherwise award is due to the good results he has obtained from medication and therapy. Thus, I find the reimbursement of these costs (including the mileage to and from his therapist) to be warranted. And many of his past expenses appear

---

[28] Due to Respondent's acknowledgement that Petitioner "may be entitled to damages for CRPS Symptoms stemming from SIRVA" (Res. Responsive Brief at 2 n.1), the first group of cases he initially cited, which do not involve any CRPS symptoms, are clearly inapposite. *Id.* at 10, 10-11 n.8 (citing *Bartholomew*, 2020 WL 3639805; *Sakowitz*, 2020 WL 3729420; *Coli*, 2022 WL 706682; *Lambert*, 2022 WL 1487253)).

[29] *See Vendiola,* 2021 WL 965667; *Snyder*, 2019 WL 7597449.

[30] *Danielson v. Sec'y of Health & Hum. Servs.,* No. 18-1878V, 2020 WL 8271642 (Fed. Cl. Spec. Mstr. Dec. 29, 2020) (awarding $110,000.00 for past pain and suffering and $250.00 per year for future); *Dawson-Savard v. Sec'y of Health & Hum. Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020) (awarding $130,000.00 for past pain and suffering and $500.00 per year for future); *Binette v. Sec'y of Health & Hum. Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $130,000.00 in past pain and suffering and $1,000.00 per year for future).

to be similarly appropriate. However, Petitioner has not provided clear evidence of the costs that he *actually paid* in this case,[31] and Respondent has not clearly stated his objections to some of these costs. Thus, I am instructing the parties to engage in further damages discussions to determine if they can reach an informal agreement as to past and future unreimbursed expenses.

In addition, the parties should attempt to agree upon the appropriate net present value for the future pain and suffering award component.[32] In doing so, they should utilize the Social Security Administration's calculation of Petitioner's life expectancy, which can be found at https://www.ssa.gov/cgi-bin/longevity.cgi (last visited Aug. 27, 2025). *See Danielson,* 2020 WL 8271642, * 5 n.10. And in determining the appropriate discount rate, the parties should utilize the multipronged approach previously employed in *Dillenbeck*. *See Joyce* v. Sec'y of Health & Hum. Servs., No. 20-1882V, 2024 WL 1235409, at *2-3 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (citing *Dillenbeck v. Sec'y of Health & Hum. Servs,* No. 17-0428V, 2019 WL 4072069, at *15 (Fed. Cl. Spec. Mstr. July 29, 2019)).

## Conclusion

Based on my consideration of the complete record as a whole and for reasons set forth in this ruling, I find that **$140,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering. Additionally, he is entitled to $1,500.00 per year for a future award.**

**The parties shall file a joint status report updating me on their efforts to inform ally resolve the question of past and future expenses and to reduce all future amounts to net present value by no later than <u>Tuesday, September 30, 2025</u>. In the status report, they should state whether they believe an informal agreement regarding the remainder of damages in this case can be reached, and should estimate the amount of time needed to do so.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[31] Although the lists obtained from Medicaire.com are helpful, there is nothing indicating they were for Petitioner and payments which were ultimately required. More helpful documentation would be billing records from Petitioner's treating physicians showing Petitioner's payment of out-of-pocket expenses.

[32] *See* Section 15(f)(4)(A) (requiring reduction to net present value for future compensation); *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring application of the statutory cap (Section 15(a)(4)) before any projected pain and suffering award is reduced to net present value).